764 July 29, 2026 No. 709

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

VITALIY YEMELYANOV,
*Defendant-Appellant.*

Multnomah County Circuit Court
20CR44738; A180940

Christopher A. Ramras, Judge.

Submitted May 13, 2025.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Kali Montague, Deputy Public Defender, Oregon Public Defense Commission, filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Colm Moore, Assistant Attorney General, filed the brief for respondent.

Before Shorr, Presiding Judge, Powers, Judge, and Pagán, Judge.

PAGÁN, J.

On appeal, conviction on Count 1 reversed and remanded; remanded for resentencing; otherwise affirmed. On cross-appeal, affirmed.

**PAGÁN, J.**

Defendant appeals a judgment of conviction for one count of driving under the influence of intoxicants (DUII), ORS 813.010 (Count 1); one count of careless driving,[1] ORS 811.135 (Count 2); and one count of failure to perform duties of a driver, ORS 811.700 (Count 3). He asserts a single assignment of error, arguing that the trial court erred by admitting the results of defendant's breath test after finding that the police violated defendant's Article I, section 12, rights under the Oregon Constitution. The state cross-appeals, claiming that the trial court erred by concluding that defendant's Article I, section 12, rights were violated. The state concedes that if we affirm on its cross-appeal and determine that defendant's argument is preserved, the failure to suppress the results of the breath test was error and was not harmless as to the DUII conviction. Because we determine that the trial court did not err by concluding that defendant's Article I, section 12, rights were violated and we conclude that defendant adequately preserved the issue, we the state's cross-appeal, accept the state's concession, and reverse and remand defendant's conviction on Count 1. We do, however, agree with the state that the failure to suppress the results of the breath test was harmless error with regard to the counts of careless driving and failure to perform the duties of a driver, and we therefore affirm defendant's convictions on Counts 2 and 3.

## I.    BACKGROUND

The parties agree as to the material facts of the case.

This case revolves around a hit-and-run incident that occurred on July 26, 2020. Officer Li, one of the initial responding officers along with her partner, Officer Clark, testified that she received a report that there had been a car crash in which one car had hit a pole and the other car involved left the scene. She then stated that she was communicating with a driver involved in the accident who had

---

[1] Defendant was initially charged with one count of reckless driving, ORS 811.140. The court found him not guilty of reckless driving but guilty of the lesser included offense of careless driving, ORS 811.135.

"called" in, who stated that there had been a car driving the wrong way along the street, which caused her crash. The driver gave a description and the license plate number of the other car, and Li and Clark soon located the vehicle, which Li testified was in the middle of the road, had sustained heavy damage, was smoking, and had its airbags deployed. The driver was not in the car. A witness nearby pointed Li towards the driver of the car, whom Li identified as defendant, who was trying to hide in the brush. Li instructed defendant to come out and detained him. Li testified that she heard Clark *Mirandize* defendant while she tried to locate the witness who had pointed out defendant. She then conducted a search of defendant when she could not locate the witness.

Li then took defendant to the police car and questioned defendant about his address, if he had been driving, and how much he had been drinking. Defendant made several incriminating statements, which were the subject of defendant's motion to suppress.

The officers then took defendant back to the precinct and to a DUI investigation room, where they were joined by another officer who specialized in DUI investigations. Defendant was not asked to perform any field sobriety tests but did answer some standard interview questions as a part of the precinct's Intoxilyzer investigation. The DUII investigator testified that defendant had a noticeable accent. Defendant was read the implied consent form and agreed to provide physical cooperation, submitting to a breath test, which returned a result of 0.21 BAC.

Before trial, defendant filed a written motion to suppress, arguing, in relevant part, that his Article I, section 12, rights had been violated and requesting that all evidence resulting from the violation be suppressed, as well as all derivative evidence. At the suppression hearing, defendant argued that the state had not met its burden to show that he understood the *Miranda* warnings provided to him in light of defendant's limited understanding of English. During that hearing, defendant did not specifically argue that the results of the breath test should be suppressed as derivative evidence following from officer's the *Miranda*

violation, focusing his argument instead on suppressing that evidence as fruit of an arrest without probable cause of DUII.

During the closing arguments of the suppression hearing, the state claimed that it had satisfied its burden to show that defendant understood his rights, stating, "Officer Li testified that she was told by Officer Clark that [defendant] did affirm his understanding of his rights, which is allowable at the motion stage." The court took issue with the state's claim in its ruling, and found that defendant's Article I, section 12, rights had been violated, stating,

> "Now, with regards to the *Miranda* rights, I went back and read Officer Li's testimony as I noted it to be, and I read that she heard Officer Clark read [defendant] his *Miranda* rights, and she did the inventory of the vehicle. I didn't see anything that suggested [defendant] was asked if he understood his rights and was still willing to speak.
>
> "That may well have happened, but I agree with Defense that I can only go off the record that was created."

The court granted defendant's suppression motion in part, ordering suppression of all of his statements to the officers after his arrest. However, the court denied the suppression motion with regard to the breath test results, determining that the state had provided sufficient evidence to infer that defendant had understood the later conversation and the implied consent form. Defendant was convicted of DUII, careless driving as a lesser included offense of reckless driving, and failure to perform the duties of a driver. Defendant timely appealed.

## II.   ANALYSIS

Because the state only concedes that the trial court erred in denying defendant's suppression motion if we affirm its cross-appeal, we address that argument first and conclude that the trial court did not err in finding that the state had failed to meet its burden of showing that defendant understood the *Miranda* warnings provided to him. Next, we conclude that defendant adequately preserved the issue of whether the breath test should be suppressed in his written motion and subsequently accept the state's concession that admitting that test was error and not harmless

as to defendant's conviction for DUII (Count 1). Last, we conclude that the failure to suppress the breath test results was harmless error in regard to defendant's convictions for careless driving and failure to perform the duties of a driver (Counts 2 and 3).

## A.  *The State's Cross-Appeal*

The state argues that the court applied the wrong legal standard when it ruled that defendant's Article I, section 12, rights had been violated, by requiring the state to show that defendant explicitly said that he understood and waived his rights. We conclude that the state misstates the trial court's reasoning and that the trial court did not use an erroneous legal standard.

We review the denial of a motion to suppress for errors of law, deferring to the trial court's factual findings that are supported by evidence in the record. *State v. Heise-Fay*, 274 Or App 196, 198, 201, 360 P3d 615 (2015). Whether defendant adequately understood the *Miranda* warnings is a question of historical fact. *State v. Corona*, 60 Or App 500, 505, 655 P2d 216 (1982).

It is well settled that the Oregon Constitution requires that police deliver adequate *Miranda* warnings to a suspect who is subjected to custodial interrogations to ensure that the suspect is "not compelled to provide information that can subsequently be used against [them] in a criminal prosecution, and to ensure that the suspect is afforded the right to counsel." *State v. Lunacolorado*, 238 Or App 691, 695, 243 P3d 125 (2010), *rev den*, 350 Or 530 (2011). While those rights may be waived, such waivers must be "knowing and voluntary." *State v. Taylor*, 296 Or App 278, 285, 438 P3d 419 (2019). We have previously held that a defendant "who does not understand the *Miranda* warnings does not understand that he or she has those rights, and statements made absent the defendant's *understanding* of those warnings are presumptively involuntary and subject to suppression because the defendant cannot validly waive those rights." *Id.* at 285-86 (internal quotation marks and ellipsis removed; emphasis in original). It is the state's burden to show that the

defendant knowingly and voluntarily waived their rights before any statement will be admissible. *Corona*, 60 Or App at 505.

Here, the state argues that the trial court erred by finding that the state had not met its burden to show that defendant understood the rights read to him because it applied the incorrect legal standard. The state argues that the court erroneously required the state to prove that defendant had expressly communicated that he understood his rights and was still willing to talk to the officers, citing the following section of the court's ruling:

> "Now, with regards to the Miranda rights, I went back and read Officer Li's testimony as I noted it to be, and I read that she heard Officer Clark read [defendant] his Miranda rights, and she did the inventory of the vehicle. I didn't see anything that suggested [defendant] was asked if he understood his rights and was still willing to speak.

> "That may well have happened, but I agree with Defense that I can only go off the record that was created."

But the state takes the court's comment out of context. In its closing argument, the state claimed that "Officer Li testified that she was told by Officer Clark that [defendant] did affirm his understanding of his rights, which is allowable at the motion stage." That claim was not supported by the record; Li only testified to having heard Clark read defendant his rights but said nothing about Clark telling her that defendant had understood them. We do not read the court's above statement as an articulation of the legal standard as the state now claims, but rather the court explaining its reasoning for ruling in defendant's favor by pointing out the disconnect between the state's argument and the actual testimony heard. The state's claim that the trial court applied the wrong legal standard therefore fails and we affirm the state's cross-appeal.

B.    *Suppression of the Breath Test Results*

1.    *Preservation*

We conclude that defendant preserved for appeal his challenge to the admission of the results of his breath test because his written motion was sufficient to put the court and

the state on notice that he was requesting that the breath test results be suppressed as derivative evidence resulting from the violation of defendant's Article I, section 12, rights.

Our preservation requirement is designed to ensure "fairness to opposing parties, by requiring that the positions of the parties are presented clearly to the initial tribunal so that parties are not taken by surprise, misled, or denied opportunities to meet an argument." *State v. Walker*, 350 Or 540, 548, 258 P3d 1228 (2011) (internal quotation marks omitted). When analyzing preservation issues, the Supreme Court many times over the years has "drawn attention to the distinctions between raising an *issue* at trial, identifying a *source* for a claimed position, and making a particular *argument*. The first ordinarily is essential [for preservation], the second less so, the third least." *State v. Skotland*, 372 Or 319, 327, 549 P3d 534 (2024) (citing *State v. Hitz*, 307 Or 183, 188, 766 P2d 373 (1988)) (internal citation omitted; emphasis original to *Hitz*). Furthermore, when, as here, a party makes a written motion and argues in favor of that motion at a hearing, the party need not reiterate *every* argument made in the written motion to preserve it for appeal. *State v. Sepulveda*, 288 Or App 632, 639, 406 P3d 169 (2017).

Here, we conclude that defendant adequately preserved the argument that the breath test should be suppressed because his motion to suppress evidence based on a violation of Article I, section 12, included the request to suppress any "derivative evidence," which unambiguously included the breath test results. In section IV of the motion to suppress, defendant argued that the state violated his Article I, section 12, rights. He concluded that section by stating,

> "Where an officer has violated a defendant's right to counsel, the prophylactic remedy of suppression is applicable. It logically follows that any and all evidence obtained as the result of an illegal stop, search, seizure, or coerced consent to search must be suppressed as 'fruit of the poisonous tree.' *This includes any and all derivative evidence.*"

(Internal citations omitted. Emphasis added.) There was no ambiguity about what evidence defendant was arguing

should be suppressed: evidence gained due to the specific violation of defendant's Article I, section 12, rights. Moreover, the breath test result was the only "derivative evidence" obtained from the violation; there was no other evidence that that term in the suppression motion could refer to. *See State v. Swan*, 363 Or 121, 133, 420 P3d 9 (2018) (holding that the state failed to met its burden to prove that defendant's decision to submit to a breath test and the test results were not derivative evidence following from the violation of the defendant's Article I, section 12, rights); *State v. Oxford*, 87 Or App 580, 581, 584 n 3, 403 P3d 528 (2017) (acknowledging that there could be cases in which defendant's challenge to "the state's 'stop and seizure of the defendant,' and the state's 'search of the defendant's residence and personal room'" would lack the specificity to apprise the court of defendant's argument, but it was unambiguous in context). Thus, even though the breath test was not expressly identified in defendant's Article I, section 12, argument, it was unambiguously a part of the body of evidence defendant sought to suppress under that argument.

The state nevertheless argues that defendant did not preserve the issue because defendant only argued that the breath test should be suppressed as evidence from an unconstitutional search in violation of his Article I, section 9, rights. The state further argues that the principles of preservation are not met here because the state and the court did not know that defendant was going to argue for suppression of the breath test under Article I, section 12, and therefore lost the opportunity to develop the record on that topic. We find neither position persuasive.

As discussed in depth above, even though defendant did not argue the Article I, section 12, angle for suppressing the results of the breath test at the suppression hearing itself, defendant's written motion adequately framed the issue because the results of the breath test were the only derivative evidence the motion could have been referring to when it raised the issue for suppression of evidence under Article I, section 12. Additionally, the state was not taken by surprise, misled, or denied an opportunity to meet the argument because the first two, most important components

of preservation were unquestionably accounted for: defendant raised the *issue* (suppression of evidence and derivative evidence) and identified the *source* (Article I, section 12) of his position on appeal in his written motion. The state had notice of the issue and relevant authority in the form of defendant's written motion. The state had the burden of persuasion and production to show that the breath test was too attenuated to be considered derivative evidence. *See Swan*, 363 Or at 133. The state's decision not to address the matter does not then mean defendant's argument was unpreserved.

Thus, given that defendant's written motion preserved the Article I, section 12, issue generally for review and the breath test was unambiguously a part of evidence defendant sought to suppress, defendant's argument was sufficiently preserved, and we now turn to the state's concession on the merits.

2.  *The state's concession*

The state concedes that, if we determine that defendant's argument is preserved and affirm the state's cross assignment of error, then the trial court did err by not suppressing the results of the breath test and the error was not harmless with regard to the DUII count. We accept the state's concession without further discussion and reverse and remand on Count 1.

3.  *Harmless error*

Despite its concession that the trial court's error in not suppressing the results of the breath test was not harmless with regard to defendant's DUII conviction, the state argues that that error was harmless with regard to defendant's convictions for careless driving and failure to perform the duties of a driver. We agree and affirm defendant's convictions on those two counts.

An error is harmless if there is little likelihood that it affected the verdict. *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). Here, the trial court explained its reasoning for finding defendant guilty of careless driving. When ruling on the careless driving count, the court stated,

"So all I really know is [defendant] was moving from lane to lane, and somehow a collision occurred."

"* * * * *

"But given that there was a collision, which did in fact, endanger property and the safety of persons, I—I will find him guilty of the violation of—of careless driving * * *."

The court did not rely on the defendant's state of intoxication when coming to that conclusion, and the elements of careless driving do not require any showing of impairment. *See* ORS 811.135. Instead, the court relied entirely on witness testimony describing the incident—evidence entirely unrelated to defendant's breath test results.

The court did not provide the same degree of analysis for its ruling that defendant was guilty of the failure to perform the duties of a driver, but like careless driving, defendant's potential intoxication was irrelevant to whether he carried out the statutorily required duties when he, the driver, knew or had reason to believe that his vehicle was involved in a collision that resulted in damage to property. *See* ORS 811.700. Those duties included remaining at the scene until defendant had given the other driver information required by statute. ORS 811.700(1)(b). We can infer from the nature of the offense and the evidence present in the record that the court relied on evidence wholly unrelated to defendant's blood alcohol test when ruling on that offense. Therefore, the court's error in not suppressing the breath test results was harmless with regard to the verdicts on Counts 2 and 3 because there was little likelihood the error affected either verdict.

### III. CONCLUSION

We conclude that the trial court did not err when it determined that the state had not carried its burden to show that defendant understood the *Miranda* rights given to him and suppressed defendant's subsequent statements to the police, and we thus affirm the state's cross-appeal. We next conclude that defendant preserved the issue of whether the trial court was required to suppress the results of his breath test and accept the state's concession that the trial court erred and that the error was not harmless with regard

to Count 1, and thus we reverse and remand on Count 1. Lastly, we conclude that the error was harmless with regard to Counts 2 and 3 and affirm defendant's convictions on those counts.

On appeal, conviction on Count 1 reversed and remanded; remanded for resentencing; otherwise affirmed. On cross-appeal, affirmed.